UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| KATHLEEN KEYSE, | ) Case No. 1:17CV1463 |
| --- | --- |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) MEMORANDUM AND ORDER |

Plaintiff Kathleen Keyse ("Keyse" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her applications for a period of disability ("POD") and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Commissioner's final decision is remanded.


I. PROCEDURAL HISTORY

On April 4, 2014, Keyse filed an application for a POD and DIB, alleging disability beginning December 11, 2012. (R. 9, Transcript ("tr."), at 17, 199-200, 221-229.) Keyse's application was denied initially and upon reconsideration. (R. 9,

tr., at 116-125, 126-142.) Thereafter, Keyse filed a written request for a hearing before an administrative law judge. (R. 9, tr., at 162-163.)

An Administrative Law Judge ("the ALJ") held the hearing on March 23, 2016. (R. 9, tr., at 34-103.) Keyse appeared at the hearing, was represented by counsel, and testified. (*Id.* at 36-84.) A vocational expert ("VE") also attended the hearing and provided testimony. (*Id.* at 36, 84-102.)

On April 11, 2016, the ALJ found Keyse was not disabled. (R. 9, tr., at 17, 29.) The Appeals Council denied Keyse's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 9, tr., at 1-3.) On July 12, 2017, Keyse filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

Keyse presents two issues for the court's review, challenging (1) the ALJ's analysis of the opinion evidence; and (2) the ALJ's credibility assessment. (R. 12, PageID #: 1227.)

II. PERSONAL BACKGROUND INFORMATION

Keyse was born on December 26, 1965, and was 46 years old on the alleged disability onset date. (R. 9, tr., at 28, 38, 199.) Accordingly, Keyse was considered a younger individual age 45-49 for Social Security purposes. *See* 20 C.F.R. § 404.1563. She has a college degree and is able to communicate in English. (R. 9, tr., at 28, 39-40, 223, 225.) Keyse had past relevant work as a college educator

(clinical); a Registered Nurse; nursing staff supervisor; and a combination job, hospice nurse/program director. (R. 9, tr., at 85-87.)

## III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Keyse's brief alleging error by the ALJ. As noted earlier, Keyse applied for DIB benefits on April 4, 2014, alleging disability beginning December 11, 2012. (R. 9, tr., at 17, 199-200, 221-229.) Keyse listed her physical or mental conditions that limit her ability to work as: "fibromyalgia, inflammatory arthritis, anxiety/depression, sleep apnea, ibs [irritable bowel syndrome], chronic fatigue, GERD [gastroesophageal reflux disease], euythmia, cyst on spine, diabetes." (R. 9, tr., at 224.)

Keyse presented to Judith D. Manzon, M.D., on February 28, 2012, complaining of leg pain, radiating down to the knees. (R. 9, tr., at 554.) She also reported swollen joints, both her great toes and her shoulders. *Id.* On examination, claimant had tenderness of the lateral hips and leg muscles, discomfort with rotation of both hips, and flexion of the left hip, although she had full range of motion ("ROM"). *Id.* at 555. The doctor administered an injection of Kenalog and Lidocaine in her hip. *Id.* at 556-557.

---

[1] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

Keyse returned to Dr. Manzon for a follow-up visit on June 20, 2012. (R. 9, tr., at 358.) Keyse reported that her pain was essentially unchanged since her previous visit. *Id.* She develops lateral hip pain radiating down the lateral thigh and into her knees. *Id.* at 358-359. Lodine tablets helped with the pain. *Id.* at 359. The injection for pain at the earlier visit only provided about two weeks of relief. *Id.* On examination, Keyse had tenderness of the chest wall, lateral hips and thighs, hamstrings, and arm and leg muscles. *Id.* at 360. Tylenol adequately controls her pain. *Id.* at 362. Her medications were continued at the current dose. The doctor had recommended physical therapy, but reported that patient only went to one session. *Id.* The doctor recommended increased walking. *Id.*

Keyse presented to Joseph Knapp, M.D., on August 30, 2012, for a comprehensive follow-up appointment. (R. 9, tr., at 369-373.) Dr. Knapp reported that Keyse had been "generally doing okay" since her last visit with him four months prior, except for some increased swelling in her legs, which showed 1 to 2+ edema. *Id.* at 369-370. Dr. Knapp noted a history of pulmonary hypertension and congestive heart failure. *Id.* at 370. The claimant also had hypertension, but was doing well on her current regimen, hyperlipidemia, ongoing thyroid issues, and diabetes. *Id.*

During a September 12th follow-up appointment with Dr. Knapp, Keyse reported that her swelling was going down, but she had 1 to 2+ edema on her right leg, with some erythema on the mid-shin, and trace to 1+ edema on the left leg. (R. 9, tr., at 381-382.) Dr. Knapp noted that her leg pain could be secondary to lumbar

4

stenosis, given her current symptoms; he ordered a lumbar MRI and increased her Lyrica to treat her symptoms. *Id.* at 382.

On September 26, 2012, Keyse had a physical therapy spine evaluation. (R. 9, tr., at 387-392.) The physical therapist (PT) Margo Aprile recorded that Keyse was seen for bilateral leg pain for the past year, worsening in the previous month. *Id.* at 387. The pain was intermittent, described as "burning, throbbing, aching, radiating." *Id.* The pain was worse with rising or standing, walking, getting in and out of a car, and climbing stairs. *Id.* The PT recorded no functional limitations. *Id.* The patient's goal was decreased pain when standing or walking. *Id.* The PT assessed that claimant's symptoms were consistent with spinal stenosis. *Id.* at 389. One PT session per week for four weeks was planned. *Id.* at 389-390.

Keyse reported, at a December 18, 2012, follow-up appointment with Dr. Knapp, that she recently had a thyroidectomy, but "she has generally been in her usual state of health." (R. 9, tr., at 428.) The doctor's objective assessment was normal, with no edemas. *Id.* at 429.

Keyse also saw Dr. Manzon on December 18 for a routine follow-up for her "presumed undifferentiated inflammatory arthritis." (R. 9, tr., at 420.) Keyse described pain in her arms, including her elbows, her wrists and shoulders, her great toes, and her left lateral hip and knee. *Id.* at 421. Tramadol keeps her pain manageable. *Id.* The pain was most bothersome in her left hip and leg, but not so much that she felt the need to resume Lodine. *Id.* There was no evidence of active

inflammatory arthritis at that visit; the primary source of her pain appeared to be fibromyalgia and osteoarthritis. *Id.* at 424.

On April 22, 2013, Keyse saw Dr. Knapp and reported her lateral epicondylitis was better, but she still had back pain and pain radiating down her left leg. (R. 9, tr., at 454; *see also* 446-447 (diagnosed with lateral epicondylitis (tendonitis) of elbow.)) At a May 7 follow-up, Keyse again complained of back pain and pain down her left leg. *Id.* at 460. X-rays of her back were performed that date, and revealed mild degenerative disk and facet disease, with normal sacroiliac joints. *Id.* at 461, 464.

Keyse received a lidocaine injection in her left hip on June 12, 2013. (R. 9, tr., at 321-322.) She reported to Dr. Manzon during a routine follow-up on June 19, 2013, that the injection provided 75% improvement in her left leg pain, but her anterior thigh pain remained unchanged. *Id.* at 477. She had no other complaints or new symptoms. *Id.*

On referral, Keyse visited rheumatologist Carmen E. Gota, M.D., on July 12, 2013, for an opinion on her pain. (R. 9, tr., at 658-675.) On physical examination, Dr. Gota found Keyse in no acute distress, with no swollen joints, normal lumbar motion and lordosis. *Id.* at 665. Her ROM in shoulders and hips was without pain. *Id.* Dr. Gota found eleven or more tender points with pressure. *Id.* at 666. Neurological exam found normal strength and sensation. *Id.* Dr. Gota diagnosed fibromyalgia, but doubted Keyse had an inflammatory condition. *Id.* at 667. The doctor also diagnosed fatigue, excessive sleepiness, moderate depression and

anxiety. *Id.* Dr. Gota stressed the importance of graded low intensity aerobic exercise, and sleep and mood conditioning. *Id.*

During a September 20, 2013, follow-up with Dr. Knapp, Keyse reported that she had been diagnosed with sleep apnea, but questioned the need for a CPAP. (R. 9, tr., at 491.) She also complained of persistent fatigue, joint pain, and low back pain which radiates down her legs. *Id.* Dr. Knapp's recommendation was to pursue the CPAP and assess whether her symptoms are improved. *Id.* at 492. The doctor noted her hypertension was stable; she had overall arthropathy, inflammatory versus fibromyalgia; and possible lumbar stenosis. *Id.* On September 30, upon recommendation by Dr. Knapp, an MRI of the lumbar spine was done, and degenerative disc changes were noted, greatest at the L4/5 with a synovial cyst impinging on the L5 nerve root. *Id.* at 497-498.

Keyse had laparoscopic gastric sleeve surgery in November 2013. She reported to Dr. Knapp on November 25, 2013, that her lumbar stenosis issues persisted. (R. 9, tr., at 584-585; *see generally* 282-284.)

On December 2, 2013, Keyse presented to Prudencio Balagtas, D.O., and Eric A.K. Meyer, M.D., at the Center for Spine Health. (R. 9, tr., at 676-677.) The patient was there to discuss her MRI results in relation to her low back and leg pain. *Id.* at 676. Dr. Balagtas recorded that Keyse had non-antalgic gait, adequate neck ROM, normal reflexes, and normal lumbar ROM with no pain. *Id.* at 677. The claimant had normal muscle examination, with no atrophy, but tenderness in her lower back. *Id.* The MRI revealed disc degeneration worst at L3-L4, L4-L5, with

facet anthropy, and a small synovial cyst not consistent with her pain. *Id.* The doctor told Keyse she expected her back and leg pain to improve as she lost weight. *Id.*

At a January 10, 2014, follow-up visit with Dr. Knapp, Keyse reported that "for the most part she has been feeling well," and she continued to lose weight after her gastric procedure. (R. 9, tr., at 622.) Her fibromyalgia and arthritic issues were reasonably stable. *Id.*

In the spring of 2014, Keyse pursued a course of ten occupational therapy sessions. (R. 9, tr., at 850-853.) The therapist reported in an April 7, 2014, "OT Chronic Pain Discharge Summary," that Keyse was discharged because she had made good progress and reached most of her goals, including the ability to occasionally lift and carry twenty to fifty pounds. *Id.* at 850-851. She was able to complete such tasks as carry ten pounds of groceries while climbing steps, to carry a full laundry basket, to vacuum, wash dishes, clean tubs, and make the bed. *Id.* Keyse was able to tolerate twenty minutes of simulated driving, and forty-five minutes of sitting at a computer. *Id.* at 851.

That same Spring 2014, Keyse also successfully completed a course of seventeen physical therapy sessions. (R. 9, tr., at 846-849.) The therapist noted: "She achieved 45 min/day of physical therapy exercise with good tolerance." *Id.* at 846. Keyse was able to do twenty-five minutes of biking at an aerobic pace. *Id.*

During a May 2, 2014, appointment with Mary Patterson, CNP, Keyse was doing well, staying active and engaged with family and friends. (R. 9, tr., at 803.)

She stated her average pain level was 4, and Nurse Patterson stated her Pain Disability Index was 49/70, "suggesting severe functional impairment; however she describes herself engaged in social activities with family and friends. Exercising regularly and volunteering in church." *Id.*

Keyse reported to Dr. Knapp at a June 18, 2014, visit that she had pursued rehabilitation for her chronic pain issues, and that some of the medication had helped, while others had not. (R. 9, tr., at 880.) She mentioned that she had applied for disability. *Id.* Keyse's hypertension was stable and well-controlled, and she had an appointment scheduled with rheumatology the following week. *Id.* at 881.

During a June 24, 2014, appointment with Dr. Manzon, the doctor noted that the primary source of her pain appeared to be fibromyalgia and osteoarthritis. (R. 9, tr., at 871.) Keyse reported that her pain was manageable the majority of the time, but the doctor suggested a prescription for the days when her pain is not adequately controlled. *Id.*

On July 14, 2014, treating physician Dr. Knapp completed a physical capacity evaluation. (R. 9, tr., at 794-796; *see also id.* at 904-906 (duplicate.)) Dr. Knapp marked the form to indicate that Keyse could stand or walk two hours per workday, sit for three hours a day, and could occasionally lift up to twenty pounds. *Id.* at 794. The doctor marked that Keyse could use her hands for pushing and pulling, but not for simple grasping or fine manipulation. *Id.* He opined that claimant could occasionally bend, climb, and lift overhead, but never crawl. *Id.* at 795. The doctor

9

also marked that Keyse would not be able to function without rest breaks in excess of the norm, and would miss or be unable to complete the workday five to ten days per month. *Id.* Dr. Knapp indicated that the claimant's pain or other symptoms would interfere with her ability to concentrate and maintain task performance. *Id.* at 796.

On August 6, 2015, Keyse returned to physical therapy for a low back evaluation. (R. 9, tr., at 1006-1014.) Keyse reported to the PT that her low back pain and leg pain had worsened in the past several months. *Id.* at 1006. Her tolerance for standing was stated as 1-1.5 hours, and walking for 45 minutes, both with pain. *Id.* Keyse characterized her pain as 4/10, and the duration as constant. *Id.* Examination revealed that she had minimal limitation in her lower back ROM, and that she had full strength and ROM in her hips and legs, except slightly reduced strength at the ankle and left hip. *Id.* at 1008. Keyse had tenderness in her lower back, at L4/5. *Id.* at 1009. The PT recommended six physical therapy sessions to decrease pain, improve sleep, and improve lumbar ROM. *Id.* at 1010.

Dr. Knapp completed a second physical capacity evaluation on February 3, 2016. (R. 9, tr., at 1170-1171.) The doctor's diagnosis of Keyse was "chronic back pain, lumbar spinal stenosis, pain in both [legs], hand numbness, fibromyalgia," and her primary symptoms were "back pain, hand pain and numbness, foot pain." *Id.* at 1170. Dr. Knapp opined that Keyse could stand or walk 30-45 minutes at a time, and would need to rest for 10-15 minutes after doing so. *Id.* He also stated that Keyse could sit 30-45 minutes at a time, and would need to rest for 5-10 minutes

afterwards. *Id*. The doctor marked that the claimant can repeatedly lift up to ten pounds. *Id*.

Dr. Knapp also indicated that, on most days, Keyse could occasionally reach, and push and pull, with both arms, and handle and finger with both hands. (R. 9, tr., at 1170-1171.) He indicated that the claimant can never squat or crawl, but can occasionally bend, climb, and use foot controls. *Id.* at 1171. Dr. Knapp opined that Keyse would often require additional breaks during a workday in excess of the norm, and would experience four days or more per month during which her symptoms would prevent her from completing an eight hour work shift. *Id*.

The state agency medical consultants provided physical RFC assessments as well. On June 3, 2014, Rachel Rosenfeld, M.D., stated that Keyse was capable of lifting or carrying twenty pounds occasionally, and ten pounds frequently; she could stand or walk about six hours of an eight-hour workday, and sit for about six hours of a workday; and she was otherwise unlimited in her ability to push or pull. (R. 9, tr., at 121-122. On reconsideration, Maureen Gallagher, D.O., M.P.H., assessed the same exertional limitations on September 23, 2014. *Id.* at 135-136. Dr. Gallagher based the exertional limitations on claimant's arthritis, fibromyalgia, and obesity. *Id.* at 136.

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the April 11, 2016, decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since December 11, 2012, the alleged onset date (20 C.F.R. 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the back, dysfunction of major joints, fibromyalgia, obesity, congestive heart failure, and osteoarthritis (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently stoop, kneel, crouch, crawl, or balance. She can frequently climb ramps or stairs. She can never climb ladders, ropes or scaffolds. She can never work in an environment with unprotected heights, moving mechanical parts or that requires commercial driving.

6. The claimant is capable of performing past relevant work as a nursing staff supervisor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 11, 2012, through the date of this decision (20 C.F.R. 404.1520(f)).

(R. 9, tr., at 19, 22, 23, 27, 29.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C.

§§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. §404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884

F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII. ANALYSIS

Keyse presents the following legal issues for the court's review:

1. The ALJ erred by failing to analyze the opinion evidence in accordance with Agency policy, regulations, and Sixth Circuit precedent.

2. The ALJ's credibility assessment is generally deficient because of the above errors; it is specifically so in light of his failure to acknowledge or discuss Plaintiff's strong work history in his credibility assessment.

(R. 12, PageID #: 1227.)

### Treating Physician

Keyse argues that the limitations opined by Dr. Knapp were greater than those adopted by the decision's RFC, and that the ALJ failed to give good reasons for rejecting the treating physician's opinion evidence of record. (R. 12, PageID #: 1227, 1240-1248.)

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[2]

---

[2] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017). Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the

15

*Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well-suited to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. The ALJ must support the good reasons with evidence in the case record, and they must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's

---

court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

opinion and the reasons for that weight. *Gayheart,* 710 F.3d at 376; *Blakley,* 581 F.3d at 406-407; *Winning v. Commissioner,* 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

The ALJ has the responsibility for reviewing all the evidence in making the determinations. 20 C.F.R. § 404.1527(e)(2). An ALJ is required to evaluate all medical opinions, regardless of source, unless an opinion is a treating source's opinion entitled to controlling weight. *Smith,* 482 F.3d at 875 (ALJ must evaluate each medical opinion in the record); *Walton v. Commissioner,* 187 F.3d 639, 1999 WL 506979, at *2 (6th Cir. 1999) (TABLE, text in WESTLAW) (per curiam); 20 C.F.R. § 404.1527(c). The ALJ must then determine how much weight to give to each opinion. *Id.* State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence. 20 C.F.R. §§ 404.1513a(b)(1); 404.1527(e). "An administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records." *Dyer v. Social Sec. Admin.,* No. 13-6024, 2014 WL 2609548, at *5 (6th Cir. June 11, 2014) (citing *Gayheart,* 710 F.3d at 376, 379-380). The ALJ will also consider any statements that have been provided by medical sources, whether or not based on formal medical examinations. 20 C.F.R. § 404.1545(a)(3).

The ALJ's decision assessed Dr. Knapp's opinions as follows:

Joseph Knapp, M.D., completed a physical capacity evaluation on July 14, 2014. Dr. Knapp treats the claimant at the Cleveland Clinic. Dr. Knapp said the claimant can stand/walk 2 hours in an 8-hour day; sit

17

>   for 3 hours in an 8-hour day; and lift 11-20 pounds. She can perform pushing and pulling, but not simple grasping or fine manipulation. He said claimant cannot use her feet for repetitive movements in operating foot controls. She can occasionally bend and climb; never crawl; frequently look down; occasionally lift overhead; and frequently turn her head to the left or right. Onset of total disability was December 2012. Claimant needed rest breaks in excess of those usually provided. She would miss work 5-10 days a month. Emotional factors contributed to the severity of claimant's symptoms. 7 or more trigger points were present. Pain interferes with claimant's ability to concentrate. A physical capacity evaluation signed by Dr. Knapp on July 14, 2014, gives the same limits. Dr. Knapp also completed a medical source statement on February 3, 2016. He said the claimant can stand/walk or sit for 30-45 minutes at a time. After this amount of activity, she would need to stand and move about for 5-10 minutes. She can lift up to 10 pounds repeatedly. He cited additional nonexertional and postural limits. He said claimant would often require additional breaks during a workday in excess of the usual breaks. Although Dr. Knapp is a treating physician, I do not give these opinions controlling weight. I give these opinions little weight, as they are inconsistent with the medical evidence of record, especially the normal neurological findings and normal gait.

(R. 10, tr., at 26-27, internal citations omitted.) In contrast, the ALJ gave "great weight" to the opinions of the state agency medical consultants, "except the evidence does support nonexertional limitations due to foot pain, hip pain and obesity, such as limits on stooping, kneeling, crouching or crawling." *Id.* at 26.

Keyse contends that the medical records provide ample support for Dr. Knapp's opinions. (R. 12, PageID #: 1245-1246.) She argues that she regularly reported pain, and that although she was treated with medications, she still reported experiencing pain. *Id.* at 1245. Keyse asserts that "the record is replete with descriptions of Plaintiff's physical limitations because of her pain." *Id.*

18

An ALJ is required to give good reasons for discounting evidence of disability submitted by the treating physician. *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. The good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart,* 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning*, 661 F.Supp.2d at 818-819. In the assessment of Dr. Knapp's opinions, the ALJ outlines the restrictions that Dr. Knapp assessed, but does not address the bases for the opinions. The ALJ simply states that Dr. Knapp's opinions are "inconsistent with the medical evidence of record, especially the normal neurological findings and normal gait." (R. 10, tr., at 27.) While it is clear what weight the ALJ is assigning to Dr. Knapp's opinions ("little weight"), the reasons for that weight are insufficient and vague. The ALJ does not identify evidence to support the statement that Dr. Knapp's opinions are "inconsistent with the medical evidence of record." *Id.* The record often demonstrates, for example, that Keyse had normal range of motion, as the ALJ notes, but at the same time the record is replete with reports of claimant's complaints of pain arising from her diagnosed conditions of fibromyalgia and osteoarthritis. *See supra.* The ALJ failed to provide a "reasoned basis" for largely rejecting the treating physician's opinions. See *Hall v. Commissioner,* No. 04-5572, 2005 WL 2139890, at *5 (6th Cir. Sept. 2, 2005) (citing *Jones*, 336 F.3d at 477.)

A more thorough explanation assessing the treating physician's opinions is required. If Dr. Knapp's opinion regarding Keyse's sit, stand, and walk limitations,

and her need for additional rest breaks (R. 9, tr., at 26-27), were credited, the VE testified that Keyse would not be able to sustain work on a regular and continuing basis. *See, e.g.*, R. 9, tr., at 94-96. In such a case, the error is not harmless error. Although the Commissioner defends the ALJ's decision and RFC, the ALJ's deficient treating physician analysis prevents the court from meaningfully analyzing the reasoning behind the ALJ's analysis or concluding that the RFC accurately describes Keyse's abilities. Therefore, the ALJ's decision is not supported by substantial evidence. *See, e.g.*, *Howard v. Commissioner*, 276 F.3d 235, 241 (6th Cir. 2002). An ALJ's failure to give "good reasons" is grounds for remand even if substantial evidence would otherwise support the ALJ's decision. *Hall*, 2005 WL 2139890, at *5 (citing *Wilson*, 378 F.3d at 544).

For the foregoing reasons, the court finds that the decision of the Commissioner is not supported by substantial evidence. Because the court remands the decision for further consideration of the treating physician's opinion, the court need not reach Keyse's credibility argument. The decision of the ALJ is vacated and remanded for further consideration.

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

Date:   September 27, 2018